## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA**,

        Plaintiff,

    v.                           No. **CR 03-2486 MCA**

**GERARDO CORCHADO**,

        Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on *Defendant's Motion for New Trial* [Doc. No. 53] filed on April 27, 2004.  Having reviewed the parties' submissions, the relevant law, and being fully advised in the premises, the Court denies Defendant's motion for the reasons set forth below.

## I.    BACKGROUND

On April 16, 2004, a jury found Defendant Gerardo Corchado guilty of two counts of distribution of less than 100 grams of a mixture and substance containing a detectable amount of heroin and one count of employing a person under 18 years of age in a drug-related offense.   [Doc. No. 52.]   On April 27, 2004, Defendant moved for a new trial. [Doc. No. 53.]  The grounds for a new trial asserted in Defendant's motion concern two issues:  (1) a continuance to obtain expert testimony regarding voice identification, and (2) closing arguments by the prosecutor concerning Defendant's right to call a witness.

### A.   <u>Voice Identification</u>

As to the first issue, Defendant filed a motion to continue the trial on February 2, 2004, and a second motion to continue the trial on March 1, 2004.  [Doc. No. 15, 20.]  Both of these motions requested additional time to obtain voice exemplars for comparison with tape-recorded conversations concerning the drug transactions charged in the *Indictment*. Both motions to continue the trial were granted without opposition by the Government, and the trial was moved to the April 2004 docket, thereby providing the parties with an additional period of more than two months to gather voice-identification evidence.  [Doc. No. 17, 21.]

On April 7, 2004, the Government filed a *Notice of Intention to Offer Expert Testimony* [Doc. No. 32], indicating its intent to call Raymond Ojeda, Jr. to testify about his analysis of a voice exemplar.  At the Call of the Calendar on the morning of April 8, 2004, counsel for the Government withdrew their tender of Mr. Ojeda as an expert and instead stated their intent to call him as a lay witness concerning the same subject matter.  Counsel stated that the purpose of analyzing the voice exemplar was to determine whether Defendant's voice is the voice heard on tape-recorded conversations concerning the drug transactions at issue in this case.  Defendant maintains that the voice on the tape-recorded conversations is that of his younger brother, Francisco H.  [Doc. No. 36.]

After hearing from the Government, defense counsel objected to the proposed testimony of Mr. Ojeda on the grounds that it does not meet the test for expert testimony under <u>Daubert v. Merrell-Dow Pharm., Inc.</u>, 509 U.S. 579 (1993), and that the Federal Rules of Evidence do not permit the Government to evade <u>Daubert</u>'s requirements by simply

relabeling the proposed testimony as a "lay opinion."  Defense counsel further stated that if the Court were going to allow Mr. Ojeda's proposed testimony, then Defendant would ask for a continuance so he could try to obtain his own voice identification expert.   I indicated at that time that I was inclined to sustain defense counsel's objection and, therefore, I was not inclined to continue the trial.  [Doc. No. 36, 43.]

Defendant never filed another motion for a continuance, and the trial proceeded as scheduled on April 13, 2004.  During the trial, I permitted the Government to  make a proffer of Mr. Ojeda's proposed testimony outside the jury's presence, after which I again sustained Defendant's objection to that proposed testimony.  Thus, Mr. Ojeda never was allowed to testify before the jury at trial.

Other lay witnesses for both sides were allowed to present testimony concerning their identification of the voice on the tape-recorded drug transactions.  In addition, Defendant and his younger brother, Francisco H., testified at trial concerning whose voice was heard on the tape-recorded conversations.  During their testimony, they each read from a transcript of one of the tape-recorded conversations in order to allow the jury to compare their voices with the voices on the tapes.

The Government did not rely solely on the tape-recorded conversations, however, to identify Defendant as the perpetrator of the crimes charged in the *Indictment*, and the tape-recorded conversations were not the only evidence of Defendant's involvement in the drug transactions on which he was convicted.  The Government also presented the testimony of undercover agents who conversed with, saw, and visually identified Defendant when they

made the  heroin purchases that form the basis for the charges in the *Indictment*.  In addition,

the Government presented circumstantial evidence linking Defendant to the crimes, including

information that the vehicle used during one of the transactions was registered to him.

### B.   Closing Argument

According to the evidence presented at trial, another individual who was working as

an informant or "cooperating source" for the Government also participated in one of the drug

transactions charged in the *Indictment*.  During closing argument, defense counsel pointed

out to the jury that the Government never called that informant to testify as a witness during

the trial.  Defense counsel argued that the jury should infer from the absence of such

testimony that the Government did not want their informant to testify because she was lying

to conceal her own culpability for the crimes in question.  Defense counsel never presented

any evidence to the jury, however, concerning the informant's unavailability or any efforts

by the defense to subpoena her, nor did defense counsel present any evidence to the Court

to support the accusation that the Government was "hiding" the informant.

In response to defense counsel's closing argument, the prosecutor made a statement

to the jury during her rebuttal to the effect that the informant was a "friend" of the Defendant

and that the defense "could have called her, too."[1]  Defense counsel objected to this line of

argument, and I instructed the prosecutor to move on.  The prosecutor then proceeded to

argue that the Government's case did not rely on the informant.

---

[1]The Government introduced evidence at trial that Defendant's younger brother, Francisco
H., was dating the informant's daughter and that Defendant had conversed with the informant
over the telephone prior to the drug transactions which gave rise to the charges in this case.

Immediately following the prosecutor's rebuttal, I gave the jury the following cautionary instruction:

> Ladies and Gentlemen, let me repeat some instructions that – part of some instructions that I have given you earlier. The law does not require a defendant in a criminal case to prove the defendant's innocence or to produce any evidence at all. The remarks that lawyers make, whether its's during the course of the trial or in opening statements, as you heard Tuesday, or closing arguments are simply that, they're arguments. They're not evidence, and you are not to consider the comments as evidence, and you are to consider only the evidence that was admitted either through the exhibits that have been admitted or through the witnesses that you heard.

As indicated in this cautionary instruction, I had already given the jury similar instructions earlier in the trial.

In my preliminary instructions to the jury given prior to the parties' opening statements, I instructed the jury that:

> after the Government has presented its evidence, the Defendant may present evidence, but is not obligated to do so. The burden or obligation, as you will be told many times during the course of this trial, is always on the Government to prove each and every element of the offenses charged beyond a reasonable doubt. The law never imposes on a Defendant in a criminal case the burden of calling any witnesses, producing any exhibits, or introducing any evidence. A Defendant is presumed to be innocent of the charges.

My preliminary instructions given to the jury also stated that "what is said in closing argument is not evidence."

In the final instructions read to the jury before closing arguments, I again instructed the jury that:

> Defendant is presumed by the law to be innocent. The law does not require a Defendant in a criminal case to prove the Defendant's innocence or to testify or to produce any evidence at all. The Government has the burden of proving a Defendant guilty beyond a reasonable doubt, and if it fails to do so you must

acquit the Defendant.

[Doc. No. 51.]  The final jury instructions also told the jury to:

> Remember that any statements, objections or arguments made by the lawyers
> are not evidence in the case.  The function of the lawyers is to point out those
> things that are most significant or most helpful to their side of the case, and in
> so doing to call your attention to certain facts or inferences that might
> otherwise escape your notice.

[Doc. No. 51.]

During deliberations, the jury sent a note asking:  "Could the defense have summoned

[the informant] or is that someone only the prosecution could have called as a witness?"

[Doc. No. 49.]  After consulting with counsel, I brought the jury into the courtroom and

answered the jury's question as follows:

> The Defendant may present evidence, but is not obligated to do so.  The
> burden or obligation, as you have been told many times during the course of
> the trial, is always on the Government to prove each and every element of the
> offenses charged beyond a reasonable doubt.  So while any party may present
> evidence, the law never imposes on a Defendant in a criminal case the burden
> of calling any witnesses, producing any exhibits, or introducing any evidence.
> Your verdict must be based only upon the evidence presented during the trial
> and the instructions as to the law that I have given to you.

The jury was sent back to the jury room to continue their deliberations, and they returned a

verdict of guilty on all counts shortly thereafter.  [Doc. No. 52.]

## II.   ANALYSIS

Rule 33(a) of the Federal Rules of Criminal Procedure authorizes a district court to

grant a new trial "if the interest of justice so requires."   The Tenth Circuit has stated,

however, that "[a] motion for a new trial is not viewed with favor and should be granted with

great caution." United States v. Miller, 987 F.2d 1462, 1466 (10th Cir. 1993).

Under Rule 33(b), a "motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty," and a "motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 7 days after the verdict or finding of guilty or within such further time as the court sets during the 7-day period." Fed. R. Crim. P. 33(b); see United States v. Higgins, 282 F.3d 1261, 1278 (10th Cir. 2002).  Excluding intermediate Saturdays and Sundays pursuant to Fed. R. Crim. P. 45(a), Defendant's motion was timely filed on the seventh working day after the jury returned its verdict.

Defendant requests that an evidentiary hearing be scheduled two months in the future so that he can obtain and present the testimony of an expert witness in the field of voice spectrographic analysis in support of his motion for a new trial.  This request is contrary to the general rule under which the trial judge who presided over the trial and is familiar with the record may decide whether to grant or deny a new trial without conducting an evidentiary hearing.  See United States v. Pearl, 324 F.3d 1210, 1215 (10th Cir. 2003); United States v. Sutton, 767 F.2d 726, 729-30 (10th Cir. 1985); United States v. Dogskin, 265 F.3d 682, 687 (8th Cir. 2001); United States v. MMR Corp., 954 F.2d 1040, 1046 (5th Cir. 1992) (collecting cases).

There are exceptional circumstances where a deviation from this general rule may be required.  See, e.g., Miller, 987 F.2d at 1466 (recantation by Government's main witness); United States v. Espinoza-Hernandez, 918 F.2d 911, 913-14 (11th Cir. 1990) (serious misconduct by Government agent).  In order for such an exception to apply, however, "the

party seeking a hearing must make 'a sufficient threshold showing that material facts [are] in doubt or dispute.'" <u>United States v. Alicea</u>, 205 F.3d 480, 487 (1st Cir. 2000) (quoting <u>United States v. Panitz</u>, 907 F.2d 1267, 1273 (1st Cir.1990)).

Defendant has failed to make such a threshold showing in this case.  Mere speculation that the Government is "guilty of bad faith" is "an insufficient basis for requiring an evidentiary hearing." <u>Sutton</u>, 767 F.2d at 729; <u>accord</u> <u>Pearl</u>, 324 F.3d at 115; <u>Alicea</u>, 205 F.3d at 487.  Similarly, the Court will not schedule an evidentiary hearing two months in the future based on speculation that Defendant might obtain new evidence favorable to his defense from an expert witness on spectrographic voice analysis or a similar methodology, especially given the fact that Defendant was granted two continuances prior to trial in order to seek such favorable evidence.  For these reasons, Defendant's request for an evidentiary hearing is denied, and I will proceed to address the merits of his motion for a new trial without such a hearing.

## A.    The Continuance to Locate a Voice-Identification Expert

Insofar as Defendant's motion for a new trial is grounded on allegations that he was denied a third continuance, I consider four factors:

> [1] the diligence of the party requesting the continuance;  [2] the likelihood that the continuance, if granted, would accomplish the purpose underlying the party's expressed need for the continuance;  [3] the inconvenience to the opposing party, its witnesses, and the court resulting from the continuance; [4] the need asserted for the continuance and the harm that appellant might suffer as a result of the district court's denial of the continuance.

<u>United States v. Rivera</u>, 900 F.2d 1462, 1475 (10th Cir. 1990) (internal quotation marks omitted).  Insofar as Defendant claims that expert testimony based on voice spectrographic

analysis or a similar methodology would be "newly discovered evidence," I consider five factors, under which Defendant must show that:

> (1) the evidence was discovered after trial, (2) the failure to learn of the evidence was not caused by h[is] own lack of diligence, (3) the new evidence is not merely impeaching, (4) the new evidence is material to the principal issues involved, and (5) the new evidence is of such a nature that in a new trial it would probably produce an acquittal.

Higgins, 282 F.3d at 1278 (internal quotation marks omitted).  The Court finds that these factors do not weigh in favor of a third continuance or a new trial.

I first consider Defendant's diligence in requesting a continuance or seeking expert testimony regarding voice identification.  As to this factor, I note that Defendant was granted two prior continuances, and the specific reasons asserted for those prior continuances are substantially the same as those asserted in Defendant's motion for a new trial, *i.e.*, to compare voice exemplars of the Defendant and his brother with the voices on the tape-recorded conversations regarding the drug transactions at issue in this case.  While Defendant claims that he was somehow misled or mistaken as to the credentials or procedures used by the Government's proposed voice-identification analyst, Mr. Ojeda, he has not made a threshold showing that the Government acted in bad faith or otherwise deprived the defense of a fair opportunity to (1) scrutinize the Government's proposal for analyzing the voice exemplars, (2) anticipate the contingency that Defendant's brother might decline to provide a voice exemplar, or (3) seek their own expert during the time provided by the first and second continuances.  On the contrary, it appears that Defendant and the Government worked out an agreed procedure for taking voice exemplars and having them analyzed before

trial, and that Defendant raised no objection to the methods used in this procedure (by means of a <u>Daubert</u> motion or otherwise) until after the unfavorable results of Mr. Ojeda's analysis were reported to him.

Defendant also was not diligent in seeking a third continuance.  In this regard, the *Notice of Jury Selecton and Trial* [Doc. No. 23] filed on March 12, 2004, clearly states that the deadline for motions to continue was April 6, 2004, at noon, and the trial preparation instructions attached thereto state that:

> It is a violation of these instructions to bring changes of plea or motions for continuances to the Court's attention for the first time at the Call of the Calendar.  It is counsel's responsibility to advise the Court of such matters by the deadlines stated in the notice of jury selection and trial, which precede the Call of the Calendar.

[Ex. 1 to Doc. No. 23.]  Despite these instructions, Defendant did not raise the issue of a continuance until the Call of the Calendar, and it is questionable whether his comments at the Call of the Calendar are sufficient to preserve the issue, as counsel only indicated that he would seek a continuance *if* the Court was going to allow Mr. Ojeda to testify, and the Court ruled that Mr. Ojeda's testimony would not be admitted.  Defendant never filed a written motion or made any further comments to clarify or press the point that he still wanted a third continuance despite my exclusion of Mr. Ojeda's proposed testimony.

Under these circumstances, it appears that Defendant made a strategic decision to defer objecting to Mr. Ojeda's testimony until the eve of trial (after the unfavorable results of Mr. Ojeda's analysis were reported), and to defer seeking his own expert on voice spectrographic analysis before trial (thereby avoiding the risk that the results of such analysis

would not be favorable to the defense).  Having successfully excluded the Government's main voice-identification witness from the first trial using this strategy, Defendant now seeks a second trial based on the possibility that he might be able to obtain an expert opinion favorable to the defense at some point in the future--as if the possibility of such favorable evidence were a "trump card" to be played after the first trial in the event that the first trial did not result in an acquittal.

To allow Defendant to obtain a new trial using this strategy in this case would establish a rule under which every criminal defendant could always obtain a second trial by postponing the decision to seek a defense expert until after the results of the first trial are known.  The Tenth Circuit has rejected such a rule by requiring criminal defendants seeking a new trial to show that they acted diligently in requesting a continuance and pursuing evidence favorable to their defense before trial.  See Rivera, 900 F.2d at 1475; Higgins, 282 F.3d at 1278.  Defendant has not made such a showing in this case.

Another factor to be considered is whether Defendant has established the likelihood that a third continuance would accomplish the purpose underlying his expressed need for such a continuance.  Because I have declined to grant an evidentiary hearing on this issue, I will assume for purposes of analysis that Defendant could obtain a witness within the next two months who would testify, based on voice spectrographic analysis or a similar methodology, that Defendant's voice is not the voice on the tape.

Nevertheless, the existence of such testimony does not mean that it would be admissible as expert opinion under Fed. R. Evid. 702.  See generally Kumho Tire Co., Ltd.

v. Carmichael, 526 U.S. 137, 141 (1999); Daubert v. Merrell-Dow Pharm., Inc., 509 U.S. 579, 592-93 (1993).  While voice identification by a lay witness familiar with the voice in question is generally admissible under Fed. R. Evid. 701 or 901(b)(5), "[t]he state of the law regarding the admissibility of voice spectrographic analysis is . . . uncertain."  5 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 901.06[2], at 901-72 (2004).  Under the particular circumstances of this case, where Mr. Ojeda's testimony was withdrawn or excluded based on Daubert concerns, and both parties presented testimony by other lay witnesses concerning the identification of the voice on the tape recordings (including the testimony of Defendant and his younger brother reciting a transcript of one of the tape-recorded conversations in open court for purposes of comparison), I am not convinced that the addition of a witness who could offer testimony based on voice spectrographic analysis or a similar methodology would assist the jury in the manner required under Fed. R. Evid. 702.  Thus, even assuming Defendant were able to locate a voice-identification expert who could produce favorable testimony utilizing this methodology, it is doubtful that expert testimony on this subject would be admissible under the circumstances of this case.

Before ruling on the admissibility of Defendant's proposed expert testimony on this subject, fairness would dictate that I afford the Government a similar opportunity to proffer expert testimony based on voice spectrographic analysis or a similar methodology. Defendant has not shown that this methodology is so reliable that it would be incapable of producing a conflicting interpretation from a Government expert based on the same data.

Thus, it is doubtful that voice spectrographic analysis, as proposed in Defendant's motion, would produce results that are so certain and so conclusive as to outweigh all other contrary evidence regarding the question of whose voice is on the tapes, especially considering that the answer to that question ultimately must be decided by a jury, not by an expert witness. See generally United States v. Adams, 271 F.3d 1236, 1245-46 (10th Cir. 2001).

A third factor to be considered is the inconvenience to the Government, its witnesses, and the Court caused by granting a third continuance on the eve of trial. This factor does not weigh in Defendant's favor. As the Tenth Circuit noted in Rivera, 900 F.2d at 1475, "any continuance granted practically on the eve of trial inevitably will disrupt the schedules of the court, the opposing party, and the witnesses who have been subpoenaed or who have voluntarily arranged their schedules to attend the trial. When, as here, a jury trial is involved, there is additional potential inconvenience to jurors and to the court." Counsel are reminded that continuances granted after the deadline set in the Court's *Notice of Jury Selection and Trial* affect not only witnesses and court staff, but also a larger group of prospective jurors who have rearranged their schedules for work, child-care, and other activities in response to a jury summons, only to have those arrangements abruptly changed a second time when the trial is postponed. Subjecting prospective jurors to such last-minute schedule changes reflects poorly on the Court and the legal profession and does not weigh in favor of a third, last-minute continuance in this case.

Finally, the most important factor to consider is "the need asserted for the continuance and the harm that appellant might suffer as a result of the district court's denial of the

continuance." <u>Rivera</u>, 900 F.2d at 1475.  In other words, a court must consider whether the new evidence to be obtained as a result of the continuance "is material to the principal issues involved" and "is of such a nature that in a new trial it would probably produce an acquittal." <u>Higgins</u>, 282 F.3d at 1278 (internal quotation marks omitted).  While in exceptional circumstances this factor alone may be strong enough to outweigh all the other factors cited above, this case does not present such exceptional circumstances.

Based on the following facts, I conclude that Defendant was not materially prejudiced by the absence of a voice-identification expert who could testify based on the results of a voice spectrographic analysis or similar methodology.  First, there was no need for Defendant to rebut the proposed testimony of the Government's voice-identification witness, Mr. Ojeda, because Mr. Ojeda was not allowed to testify before the jury at trial.  Second, Defendant was allowed to present his own lay opinion, as well as that of his younger brother and other witnesses, in order to rebut the Government's contention that it was his voice on the tape recordings.  Third, the jury was able to make its own comparison of the voices in question because they heard both the tape recordings and the actual voices of Defendant and his younger brother reciting a transcript of one of the tape-recorded conversations during the trial.  In addition, the tape recordings and voice exemplar (which had been admitted into evidence) were delivered to the jury room, along with a tape player, for the jury to examine during its deliberations.

Finally, the evidence of Defendant's guilt or his involvement in the drug transactions at issue in this case did not consist of, or rely solely upon, the voice on the tape recordings.

14

As noted above, the Government also presented the testimony of undercover agents who conversed with, saw, and visually identified Defendant face-to-face during each of the drug transactions which forms the basis for the charges in the *Indictment*, as well as circumstantial evidence such as the vehicle registration forms linking Defendant to the vehicle that was used in one of these transactions.  The evidence of Defendant's guilt was overwhelming and did not rely solely on voice analysis of the tape-recorded conversations and voice exemplar that were admitted into evidence at trial.  Thus, a voice-identification expert, whose testimony the jury is free to disbelieve in light of other contrary testimony and their own comparisons of the voices at issue, would not have changed the outcome.

### B.   The Prosecutor's Comments During Closing Argument

With respect to closing arguments, the general rule is that prosecutors are given considerable latitude in responding to an argument raised by opposing counsel.  See United States v. Hernandez-Muniz, 170 F.3d 1007, 1012 (10th Cir. 1999); United States v. Coleman, 7 F.3d 1500, 1506 n.4 (10th Cir. 1993).  The prosecution also is generally "free to comment on a defendant's failure to call certain witnesses or present certain testimony." Trice v. Ward, 196 F.3d 1151, 1167 (10th Cir. 1999); accord Battenfield v. Gibson, 236 F.3d 1215, 1225 (10th Cir. 2001); Pickens v. Gibson, 206 F.3d 988, 999 (10th Cir. 2001).

It is generally presumed that a jury follows a trial court's instructions and understands a trial court's answers to its questions.  See Weeks v. Angelone, 528 U.S. 225, 234 (2000); United States v. Carter, 973 F.2d 1509, 1513-14 (10th Cir. 1992).  Therefore, erroneous comments during closing arguments generally can be cured by an instruction from the trial

court.  See Coleman, 7 F.3d at 1506.

An important exception to these general rules is that a prosecutor may not comment on a defendant's decision to refrain from testifying.  See Griffin v. California, 380 U.S. 609, 615 (1965).  If a prosecutor's remarks "'concern matters that could have been explained only by the accused, ... [they] give rise to an innuendo that the matters were not explained because [defendant] did not testify' and, thus, amount to indirect comment on the defendant's failure to testify."  Pickens, 206 F.3d at 999 (quoting United States v. Barton, 731 F.2d 669, 674 (10th Cir.1984)).  Similarly, if the prosecutor knows a particular witness would invoke the Fifth Amendment privilege if called to testify, the prosecutor cannot remark upon the defendant's failure to call that witness.  See United States v. Miller, 460 F.2d 582, 588 (10th Cir.1972).  These prohibitions do not apply in this case, however, because the Defendant and his younger brother elected to testify at trial despite being advised of their Fifth Amendment privileges.

Another exception to the general rule permitting the prosecution to comment on a defendant's failure to call a witness may arise if the prosecution has refused to disclose the identity and whereabouts of the witness who is the subject of that comment, and the Court declines to order the prosecution to disclose that information, such that the witness is unavailable to the defense.  Under these circumstances, it may be improper for the prosecution to argue to the jury that they can draw an inference adverse to the defendant based on the defendant's failure to call the witness whose identity and whereabouts remain undisclosed.  See United States v. Saa, 859 F.2d 1067, 1075 (2d Cir. 1988).

16

The circumstances under which this exception may apply are not present in this case for the following reasons.  First, unlike the informant in Saa, the informant's identity in this case was disclosed to Defendant and to the jury.  While defense counsel has made assertions suggesting that the defense team could not locate the informant because the Government was "hiding" her, Defendant has presented no evidence with his motion to make a threshold showing in support of these assertions.  See Higgins, 282 F.3d at 1278 (concluding that the trial court did not abuse its discretion in denying a motion for a new trial because the defendant failed to present persuasive evidence to support his theory that the Government had actively discouraged a witness from testifying); cf. Sutton, 767 F.2d at 729 (declining to grant a new trial based on mere speculation that the Government is "guilty of bad faith"); Pearl, 324 F.3d at 115 (similar); Alicea, 205 F.3d at 487 (similar).

Further, Defendant did not present evidence to the jury regarding the informant's unavailability.  In this respect, his motion for a new trial is even weaker than the Defendant in Higgins, 282 F.3d at 1278, who at least presented the testimony of a process server to show the efforts that had been made to serve a subpoena on the absent witness.  Without such testimony, it is more plausible to conclude that the informant's absence at trial is attributable to a tactical decision by Defendant to cast blame on an "empty chair" rather than any misconduct on the part of the Government.

This case also is distinguishable from Saa because unlike the trial court in that case, I did not give the jury an "uncalled witness" instruction to the effect that the jury could draw adverse inferences from Defendant's failure to call a witness.  Such an instruction was a

17

significant factor in Saa because the prosecution in that case was able to bolster its closing argument about the defendants' failure to call the undisclosed informant by pointing to a jury instruction inviting them to draw adverse inferences from that fact.  No such instruction was given here, and the prosecutor did not tell the jury that they could draw any adverse inference from the fact that Defendant did not call the informant as a witness at trial.  Rather, I instructed the prosecutor to move on to another point, which she did, and I repeatedly instructed the jury as to the Government's burden of proof and the principle that arguments of counsel are not evidence.

Defendant contends that, despite these instructions, the prosecution's closing argument was a source of jury confusion, as evidenced by the note from the jury submitted during their deliberations, which asked:  "Could the defense have summoned [the informant] or is that someone only the prosecution could have called as a witness?"  [Doc. No. 49.]  To the extent that a curative instruction responding to this question was necessitated by juror confusion about the reasons for the informant's absence at trial, I find that the source of that confusion was the Defendant's closing argument, not the prosecution's rebuttal.  Defense counsel made the argument that the informant did not testify, but presented no evidence to the jury to establish whether or why she was unavailable.  It is understandable that jurors may be confused by an argument asking them to draw inferences from a witness' absence when the party making that argument has presented no evidence to establish whether or why that witness was unavailable.

Such confusion about the reasons for the informant's absence at trial does not mean

that the jury misunderstood the burden of proof or drew inferences adverse to Defendant based on his failure to call the informant as a witness.  As noted above, the jury was never instructed that they could draw such inferences from the informant's absence, but they were repeatedly instructed that the Government bears the burden of proof, that the Defendant is not required to call witnesses or present any evidence at all, and that arguments of counsel are not evidence.  In light of the fact that the jury presented no further questions after the curative instruction was given, I conclude that this instruction was sufficient to cure any juror confusion that might have resulted from the controversy over the informant's absence at trial. See Carter, 973 F.2d at 1513-14 (concluding that juries are presumed to follow a trial court's instructions); Coleman, 7 F.3d at 1506 (concluding that erroneous comments during closing arguments generally can be cured by an instruction from the trial court).

Finally, even under the more egregious facts presented in Saa, the Second Circuit still concluded that the error in the prosecution's closing argument was harmless and affirmed the defendants' convictions.  See Saa, 859 F.2d at 1077-78.  Thus, Saa does not stand for the proposition that the kind of comments at issue here warrant a new trial or reversal of a conviction.

In this case, I conclude that the alleged error in the prosecutor's closing argument does not warrant a new trial because the evidence of Defendant's guilt was so overwhelming that the controversy over the informant's absence at trial was not a significant factor.  In this regard, the evidence showed that both drug transactions charged in the *Indictment* were witnessed by several undercover agents who testified at trial, and the informant was not even

present during second drug transaction.

## III.   <u>CONCLUSION</u>

For the foregoing reasons, Defendant has not established grounds for granting a new trial, nor has he made the threshold showing necessary for an evidentiary hearing on the issues raised in his motion.

**IT IS, THEREFORE, ORDERED** that Defendant's *Motion for a New Trial* [Doc. No. 53] is **DENIED**.

**SO ORDERED** this 28th day of June, 2004, in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
UNITED STATES DISTRICT JUDGE